The court below considered the sum assessed upon the defendant by the commissioners of estimate and assessment, whose report was confirmed on the 3d day of April, 1839, as a lien in the nature of a mortgage upon the lot of land in respect to which it was assessed; and the judgment appealed from consequently contains the usual provisions in a decree of foreclosure of a mortgage. The defendant maintains that the provision of law, giving to certain assessments in the city of New-York the effect of a mortgage lien, does not embrace this assessment; that if it should be held to embrace it, then that the lien was extinguished by the sale of the lot and the payment of the purchase money to the corporation in October, 1841; and finally, if there were no other defence, that the plaintiffs are bound by the limitation of six years, which it is insisted is applicable to this demand.
(1.) The two hundred and twenty-third section of the statute entitled "An act to reduce several laws relating particularly to the city of New-York into one act," passed April 9, 1813 (2R.L., 433), contains the provision relied upon by the plaintiffs. *Page 149 
The four sections of the statute, which immediately precede this one, relate to the subject of wharves, piers and slips, and to certain exterior streets or wharves which the corporation was authorized to construct in front of the navigable waters by which the city is in part surrounded. As to wharves and slips, it is provided that the common council may take the ground of the individual citizens, for the purpose of constructing them; and if they cannot agree with the owner as to the compensation, the damage and recompense to which he is entitled are to be assessed by a jury to be impanneled in the mayor's court. This money is not directed to be assessed upon any one, but, so far as it appears, is to be paid out of the city treasury. (§ 219.) The exterior streets or wharves referred to are to be constructed by and at the expense of the proprietors of the land opposite such streets, and where the lots of such proprietors do not extend quite to the streets, they are to fill up and level the intermediate spaces; and in default of their doing it, the corporation is to do it for them and charge them with the expense, which, if not paid by the proprietors in a given time, may be levied by distress and sale of the goods of the proprietors or occupants, or recovered against the proprietors in an action of debt. (§§ 220, 221, 222.) Then follows the section, the construction of which is the subject of dispute. It declares "that the said sums so to be expended on behalf of the proprietors, and every sum which hath heretofore been assessed among the owners or occupants of any houses and lots in the said city, by virtue of the act entitled `An act for regulating the buildings, streets, wharves and slips in the city of New-York,' passed the 16th of April, 1787, or by virtue of an act with the same title, passed the 3d day of April, 1801, and not repealed,or shall hereafter be assessed by virtue of this act, shall be a lien or charge upon the houses and lots in respect to which such assessments shall have been made, and shall bear lawful interest until *Page 150 
paid, and shall be entitled to a preference before all other incumbrances upon the same, and may be sued for and recovered with costs, in like manner as if the said houses and lots weremortgaged to the mayor, aldermen and commonalty for the payment thereof; provided always, that nothing herein contained shall extend to charge any such houses or lots which may have beenbona fide sold and disposed of after the making of such assessment thereon, and before the 3d day of April, 1798." (§ 223.) Immediately following this section are several provisions, extending through many sections, relating to piers, wharves and docks; but none of them authorize an assessment upon the lands of individuals. The directions of the common council upon these subjects are enforced by providing for the forfeiture of wharfage by the proprietors who shall neglect to comply with the orders of the corporation for the constructing of wharves and piers. (§§ 224 to 236.) The whole of the several sections to which I have referred have prefixed to them, in the printed act, the words "wharves, piers and slips;" and throughout the act, the subjects of the various provisions are indicated by a similar running title, inserted in the body of the page immediately preceding the sections which treat upon the subjects indicated. The provisions of the statute, under which the assessment in question was imposed upon the defendant, are contained in an earlier part of the act, and are preceded by the words "opening and laying out streets, c." (§§ 177 to 192.) Sections 259 and 260 are under the heading, "collection of assessments." They provide that assessments already made, or which shall thereafter be made, and which are liens upon lots belonging to individuals, may, if not paid on demand, be collected by a sale of the lots, to be made pursuant to an advertisement, for the shortest term of years at which any person shall offer to take the same and advance the amount of the assessment, with interest and costs. The defendant's counsel insists that the *Page 151 
expression in the 223d section, declaring that the sums which shall thereafter be assessed by virtue of that act shall be equivalent to liens by mortgage, is limited to such as shall be made under that portion of the act to which the section belongs, and which relates to wharves, piers and slips, and that assessments, such as the one in controversy, which are reported by the commissioners of estimate and assessment, and confirmed by the supreme court, under the earlier sections referred to, are not within the purview of that provision, but are to be enforced by means of other provisions contained in the act, as altered and modified by subsequent statutes. (Laws 1816, p. 114, § 2; 1840, p. 273, §§ 9, 10; 1841, p. 211, §§ 3, 4, 5, 6, 9.) I am unable to assent to this position. In the first place, the language is broad enough to reach the class of assessments to which the one under consideration belongs. It is a sum assessed by virtue of that act, and the expression is not limited to any particular part of the act. The entitling of the different portions, if it was really a part of the act as it passed the legislature, and not, like the words in the margin, inserted by the printer for purposes of easy reference, is still of no weight in construing the statute. The title is not legally any part of the act, being usually appended after it has passed. It is not of any legislative import. (Dwarris on Statutes, pp. 322, 659,ed. 1848.) It is, therefore, impossible to maintain that when the provision referred to speaks of sums to be assessed "by virtue of this act,' it refers to the portion of the act under the heading which speaks of wharves, c. But there are other insurmountable objections to thus restricting these words of reference. No assessments are to be made under that division of the act (if it may be so called) to which section 223 belongs. The expenses of constructing the exterior wharves and filling up the intermediate spaces, which the statute requires shall be collected of the proprietors of lots, are not called assessments, and there is no method prescribed for apportioning them which *Page 152 
can be properly termed an assessment. Besides, these expenses, which are the only charges upon the lands of individuals which are contained in this division of the act, are provided for in terms and by their proper designation in the 223d section. The "sums so to be expended on behalf of the said proprietors," form one class of the burthens which are to become liens in the nature of the mortgage, and are quite distinct from the sums to be "hereafter assessed by virtue of this act." It may be admitted that the assessments which have already been made by virtue of the statutes referred to in the 223d section, and which remained unpaid, were of a different kind and for somewhat different purposes from those to be made through the instrumentality of the commissioners and the supreme court, as provided by that act; but this only proves that the legislature intended to embrace different classes of public exactions in one provision, and to clothe them all with a common attribute. If the sum "to be assessed by virtue of this act" does not embrace the assessment in question, it would be difficult to maintain that it has any effect, for if it does not refer to this class of assessments there is none upon which it can have any operation. I do not feel any difficulty from the circumstance that other remedies for the collection of these assessments are given by the act of 1813 and by subsequent legislation. It was of great public importance that efficient means should be provided by which the public might realize the sums assessed. Thus, the assessments had been made a lien upon the lots, and the remedy by distress and sale and by action of debt had been provided by a prior section (187), and subsequent provisions, as before remarked, provided for a sale for a term of years. But a case might exist where none of these remedies would be exactly adapted to the case. Both the owner and occupant might be without personal property, and purchasers under an ex parte sale are proverbially unsafe. By providing a lien in the nature of a mortgage, the party assessed might be called into court *Page 153 
to show, if he could, that the proceedings were irregular, and the purchaser, under a bill of foreclosure, would have the protection of a judgment of the court affirming the legality of the lien. It is urged on behalf of the defendant, that the wordshouses and lots, which occur in the 223d section, are used to denote a class of assessments in which the burthen is in terms thrown upon property thus designated, and that the assessment in question being imposed nominally upon property described asland, tenements and hereditaments (see §§ 175 and 186), is not embraced in the provision in which houses and lots are alone spoken of as the subject of the mortgage lien. It was clearly unnecessary to use the term houses, in order to embrace all the dwellings upon a lot; and besides, the terms houses and lots would be taken distributively, if the subjects represented by the words were separable. The revised act of 1813 was a consolidation of a great number of separate statutes passed at different times, and necessarily the work of different draftsmen, who had, at times, used different words to express the same idea. For instance, the assessments for paving and regulating streets, which are authorized by several separate acts and parts of acts, and which are consolidated in sections 175 and 176 of the act of 1813, are to be made among the owners or occupants of all thehouses and lots intended to be benefited thereby (see Laws
1801, ch. 129, § 11; Laws 1798, ch. 80, pp. 459, 462); but the acts authorizing the taking of land for streets and assessing the benefit upon the proprietors of adjacent lands, use the phraseology lands, tenements and hereditaments, as in those parts of the act of 1813 already referred to. (See Laws of
1807, ch. 115, p. 275; Laws 1812, p. 350, §§ 2, 10.) It is obvious to my mind that no difference was supposed to exist between the subjects to be assessed in both cases, and that the diversity of language is accidental merely, arising out of the circumstances which I have mentioned. It is by no means certain that the qualification intended by the *Page 154 
words "among the houses or occupants of any houses or lots," as used in the 223d section, applies to the sums "hereafter to be assessed by virtue of this act," subsequently occurring. The more natural construction would be to consider the first mentioned words as applying only to the assessments made by virtue of the two acts referred to in the section. I am satisfied, for these reasons, that the remedy referred to is a cumulative provision provided for this case, in addition to the other modes of collecting the assessment furnished by the statute.
(2.) I am of opinion that the lien was not extinguished by the sale of the premises for a term of years, which took place in 1841. Should it be admitted that the statement in the conditions of sale, to the effect that if irregularities were discovered which should prevent the sale from being effectual the purchase money and interest should be returned, was unauthorized by law, it would not aid the defendant. It would perhaps prove that the sale was illegal. But having made such a proposal to the purchaser, and it turning out that by reason of a formal defect the sale had become inoperative, returning the money was only fulfilling the bargain which had been made. The whole proceeding authorized by the acts of 1813, 1816, 1840 and 1841 was necessary to be gone through with, in order to divest the title of the person assessed and to confer title upon the purchaser. Until the last step had been taken, nothing had been done to disturb the owner in his possession or his title, and before that step was had the inchoate proceeding was abandoned with the consent of the purchaser, and pursuant to one of the terms upon which the property was offered for sale. The proceeding thus became void from the beginning. Although the corporation at one time had the purchaser's money in their hands to the amount of the assessment, it was a conditional and not an absolute payment; and though, until default was made in perfecting the title, the remedy for the assessment was probably suspended, it was never *Page 155 
extinguished. It was urged that it was the fault of the corporation that the sale was not made effectual, and that by insisting on the continuance of the lien it is seeking an advantage growing out of its own fault. It should be remembered, however, that the functionaries, whose duty it was to have published the notice of redemption, acted upon this subject as public officers, and that their delinquency in this particular is of the same character as the neglect of a sheriff or other executive officer in enforcing process at the suit of an individual. Such a neglect, where there is no question of jurisdiction, and where the party proceeded against has not suffered any injury, does not ordinarily prejudice the right of the creditor or prevent his proceeding anew against the debtor. A levy of personal property under an execution, of sufficient amount to satisfy the judgment, is prima facie an extinguishment of it; but if through the fault of the sheriff the levy is abandoned and the debtor is suffered to remain in possession, a further execution may be levied. (Peck v.Tiffany, 2 Comst., 451.) To amount to a satisfaction, the debtor must have been deprived of his property. In this case, the defendant has not been deprived of any valuable thing even for a moment, and the city has not received any beneficial payment. The lien created by the assessment remained in force therefore when this suit was commenced.
(3.) The statute of limitations relied on, is that contained in the Revised Statutes, by which it is declared that "all actions of debt founded upon any contract, obligation or liability, not under seal, excepting such as are brought upon the judgments or decrees of some court of record of the United States, or of this or some other state," shall be commenced within six years next after the cause of such action accrued, and not after. (2 R.S.,
296, § 18, subd. 1.) There is a difficulty in holding this assessment to be a judgment of a court of record; for, although the supreme court acted in the matter by making an order confirming the report of the commissioners, *Page 156 
it was not, I conceive, by virtue of its general powers as a court of record, but in the execution of a special and limited jurisdiction conferred by the statute. It certainly was not a judgment in the popular or in the legal sense of that term. No process of the court could be awarded for its enforcement. It is rather a statutory method of creating a lien upon property than a judgment. But I am of opinion that the assessment is to be considered as, in effect, a mortgage, as well in regard to the time of commencing an action upon it as in other respects. The statute declares that the sum assessed may be sued for and recovered with costs, "in like manner as if the said houses and lots were mortgaged" to the corporation for the payment thereof. If the premises had been mortgaged in the ordinary manner for this assessment, there would be no law of limitation applicable to it, except the presumption of payment, which would not attach until after the expiration of twenty years. (2 R.S., 301, § 48;Heyer v. Pruyn, 7 Paige, 465.)
The result of the foregoing positions, if they are correctly laid down, is, that the judgment of the superior court was right and should be affirmed.
Judgment affirmed.